JS-6

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZACARIAS ALEJANDRE RODRIGUEZ, <br><br> Plaintiff, <br><br> v. <br><br> NOVOLEX HOLDINGS, LLC et al., <br><br> Defendants. | Case No.: 2:26-cv-00068-MEMF-SK <br><br> **ORDER GRANTING PLAINTIFF'S MOTION TO REMAND [DKT. NO. 22]** |

Before the Court is Plaintiff Zacarias Alejandre Rodriguez's Motion to Remand. Dkt. No. 22 ("Motion"). For the reasons stated herein, the Court hereby GRANTS the Motion.

/ / /

/ / /

/ / /

/ / /

/ / /

1

## I.    Background

### A.  Factual Allegations[1]

Plaintiff Zacarias Alejandre Rodriguez was employed by Defendant Novolex Holdings, LLC ("Novolex") as a non-exempt employee in the role of "Packer" from May 26, 2022, to December 13, 2024. Dkt. No. 15 ("1AC") ¶ 16. Based in City of Industry, California, Rodriguez was responsible for a variety of tasks, including, but not limited to, packing food bags and cleaning. *Id.* Novolex is a leading manufacturer of food, beverage, and specialty packaging that serves multiple industries, including foodservice, restaurant delivery and carryout, food processing, grocery and retail, and industrial. *Id.* ¶ 1.

During his employment with Novolex, Novolex consistently failed to accurately record and pay for all time worked, including the time non-exempt employees were under the employer's control. *Id.* ¶ 20. This included a policy and practice of failing to properly record the time worked by non-exempt employees, including all time spent working off the clock. *Id.* As a result of this company-wide policy/practice, Rodriguez and other non-exempt employees were not compensated for all of the hours they worked and all of the overtime they worked. *Id.*

Due to certain policies, practices or procedures, Rodriguez and other class members suffered various California Labor Code and Business and Professions Code violations. *See generally id.* In particular, Novolex failed to pay Rodriguez for all of the hours he worked, including minimum wage and overtime wages; failed to provide Rodriguez uninterrupted meal and rest periods; failed to timely pay Rodriguez all final wages upon separation from employment; and failed to furnish accurate, itemized wage statements. *Id.* As a result, over a period of time, Rodriguez and other non-exempt employees were not properly paid for all hours worked. *Id.* ¶ 21.

Further, Rodriguez and other non-exempt employees worked regular shifts that lasted longer than eight hours in a workday and resulted in non-exempt employees regularly working more than forty hours in a workweek. *Id.* ¶ 24. However, Novolex uniformly failed to properly calculate and pay overtime wages at the proper legal rate due to Novolex's failure to include all forms of

---

[1] The following factual background is derived from the allegations in Rodriguez's First Amended Complaint, Dkt. No. 15 ("1AC"), except where otherwise indicated. The Court makes no finding on the truth of these allegations and includes them only as background.

compensation/remuneration, including, but not limited to, stipends, shift pay, non-discretionary bonuses, commissions, incentives, and all other forms of remuneration in calculating the "regular rate of pay" for purposes of overtime compensation. *Id.* Novolex had a policy of requiring Rodriguez and the other non-exempt employees to work in excess of eight (8) hours in a workday and/or forty (40) hours in a workweek without compensating them at the lawful rate of one-half (1 1/2) their regular rate of pay. *Id.* ¶ 27.

Novolex also failed in its obligation to provide Rodriguez and other non-exempt employees with their legally required paid sick days. *Id.* ¶ 28. Rodriguez and other non-exempt employees were also denied compliant and timely thirty-minute off-duty meal periods. *Id.* ¶ 31. Due to Novolex's uniform meal period policies/practices, operational requirements, and work demands, Rodriguez and other non-exempt employees often could not take timely and uninterrupted net thirty-minute first meal periods before the end of the fifth hour of work. *Id.* Further, when Rodriguez and other non-exempt employees worked more than ten hours in a shift, they were not allowed or permitted to take a mandated second meal period before the end of the tenth hour of work. *Id.* Indeed, their meal periods were often interrupted and/or lasted fewer than thirty minutes due to Novolex's meal period policies/procedures, operational requirements, and work demands. *Id.* For each missed or non-compliant meal period, Novolex failed and continues to fail to maintain a mechanism by which non-exempt employees were paid meal period premiums at the regular rate of pay. *Id.* ¶ 32. Due to Novolex's uniform meal period practices, non-exempt employees were also regularly denied legally compliant meal periods. *Id.* ¶ 33.

Additionally, Rodriguez and other non-exempt employees were not provided with all ten-minute rest periods for every four hours worked, or a major fraction thereof, due to Novolex's uniform rest period policies/practices, operational requirements and work demands. *Id.* ¶ 34. As a result, Rodriguez and other non-exempt employees were and are often unable to take a net ten-minute duty-free rest period for every major fraction of four hours worked. *Id.* This includes a second rest period for shifts in excess of six hours and a third rest period for shifts in excess of ten hours in a workday. *Id.*

**B. Procedural History**

Rodriguez filed suit in Los Angeles County Superior Court on December 4, 2025. *See* Dkt. No. 1-3. Novolex removed the action to this Court on January 5, 2025, pursuant to the Class Action Fairness Act ("CAFA"). *See* Dkt. No. 1 ("NOR"). The Notice of Removal was appended with the Declaration of Chase Williams. Dkt. No. 1-1 ("Williams Decl.").

Rodriguez filed a First Amended Complaint on February 5, 2026, alleging the following eight claims: (1) failure to pay minimum wages; (2) failure to pay overtime wages; (3) meal period violations; (4) rest period violations; (5) failure to pay sick time; (6) wage statement violations; (7) waiting time penalties; and (8) unfair competition. *See generally* 1AC.

Rodriguez filed the instant Motion on February 10, 2026. Dkt. No. 22 ("Motion"). Novolex filed its Opposition on March 6, 2026. Dkt. No. 24 ("Opposition"). Rodriguez filed a Reply on March 16, 2026.[2] Dkt. No. 17 ("Reply").

The Court finds this matter appropriate for resolution without oral argument and hereby VACATES the hearing set for April 9, 2026, 2026. See Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. For the reasons stated below, the Court DENIES WITHOUT PREJUDICE the Motion.

**I.    Applicable Law**

**A. Class Action Fairness Act**

"Federal courts are courts of limited jurisdiction. They possess only the power authorized by [the] Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). Removal of a state action to federal court is appropriate only if the district court would have had original jurisdiction over the action. *See* 28 U.S.C. § 1441(a). Under CAFA, federal courts have original jurisdiction over civil class actions in which: (1) the aggregate number of members in the proposed class is 100 or more; (2) the amount in controversy ("AIC") exceeds the

---

[2] Under Local Rule 7-12, "[a] Court may decline to consider any memorandum or other document not filed within the deadline set by order or local rule. The failure to file any required document, or the failure to file it within the deadline, may be deemed consent to the granting or denial of the motion . . . ." The Court's Civil Standing Order orders the parties that "all Motions must be filed in accordance with the following modified briefing schedule . . . . Reply: Must be filed no later than seven (7) days after the Opposition." Civil Standing Order § VIII(B). Here, Rodriguez filed his Reply ten (10) days after Novolex's Opposition. Although Rodriguez has failed to comply with the Court's Orders, the Court will not deny Rodriguez's Motion on this basis. The parties are admonished that future failure to comply with the Court's Orders may result in the Court declining to consider the parties' briefing.

4

sum or value of $5,000,000; and (3) the parties are minimally diverse. 28 U.S.C. §§ 1332(d)(2), (5)(b).

When a plaintiff files an action in state court over which federal courts might have jurisdiction, the defendant may remove the action to federal court. *See* 28 U.S.C. § 1446. When the defendant does so pursuant to CAFA, the defendant must make a "plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). If the plaintiff contests whether the amount of controversy is sufficient for jurisdiction, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* at 88.

The defendant who removes bears the burden "to show the amount in controversy by a preponderance of the evidence." *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 994 (9th Cir. 2022). There is "no antiremoval presumption" in cases invoking CAFA jurisdiction. *Dart Cherokee*, 574 U.S. at 89. In other words, while a defendant bears the burden of showing removal is proper, there is no "thumb on the scale against removal." *Jauregui*, 28 F.4th at 994.

Rather, the procedure is that "[t]he parties may submit evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)). In determining the AIC, the defendant may rely on "a chain of reasoning that includes assumptions." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 925 (9th Cir. 2019). "An assumption may be reasonable if it is founded on the allegations of the complaint." *Id.* However, "a defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Ibarra*, 775 F.3d at 1197. Thus, when the calculations cannot be justified by the allegations in the First Amended Complaint—or are "unreasonable" assumptions— the removing party must present evidence to support the assumptions made. *Perez v. Rose Hills Co.*, 131 F.4th 804, 809 (9th Cir. 2025). Put another way, the district court must first consider whether any assumptions made by the defendant are a reasonable interpretation of the complaint, and may not reject assumptions on the basis that they are not supported by evidence. *Perez*, 131 F.4th at 809.

It is well-settled in the Ninth Circuit that CAFA's provisions should be interpreted broadly with a "strong preference" for class actions to be heard in federal court *when properly removed*. *Jauregui*, 28 F.4th at 993. And in the early stages of litigation, a defendant has no choice but to rely on assumptions when calculating an AIC using the plaintiff's complaint before resolving any disputes over key facts. *Id.* As a result, it is inappropriate to demand exact certainty from a defendant in their calculations of the AIC. *Id.* However, "[w]here a defendant's assumption is unreasonable on its face without comparison to a better alternative, a district court may be justified in simply rejecting that assumption and concluding that the defendant failed to meet its burden." *Id.* at 996.

On the other hand, where "a defendant's assumption is rejected because a different, better assumption is identified . . . the district court should consider the claim under the better assumption—not just zero-out the claim." *Id.* In such circumstances, the Court should identify, applying a preponderance of the evidence standard, the best possible assumptions, and use them to calculate the total AIC. *See id.* If the total amount is found to be greater than $5 million, the action will remain in federal court. *See* 28 U.S.C. § 1332(d)(2). If not, it should be remanded to state court. *See id.*

## II.    Discussion

The parties do not dispute that the aggregate number of class members is 100 or more, or that the parties are minimally diverse. 28 U.S.C. §§ 1332(d)(2), (5)(b); *see generally* Motion; Opposition; Reply. Thus, the prevailing issue is whether the AIC is satisfied under CAFA.

### A.  Class Action Fairness Act Jurisdiction Does Not Exist.

Rodriguez argues that Novolex cannot prove, by a preponderance of the evidence, that Novolex's proffered evidence establishes the AIC exceeds $5 million. Motion at 3-4; Reply at 1-2. Novolex contends that its estimations, reasonably based on the allegations set forth in Rodriguez's First Amended Complaint, *see* 1AC, as well as the supporting Williams Declaration, satisfy the AIC under CAFA, Opposition at 4-6, 11. For the reasons stated below, the Court determines that Novolex has not met the CAFA AIC threshold.

Rodriguez bases his argument on the following: (1) Novolex has failed to present any documentary evidence substantiating its AIC calculations; and (2) Novolex's assumptions are

unreasonable based on the allegations set forth in the First Amended Complaint. Motion at 3-4. Specifically, Rodriguez asserts Novolex's calculations are founded on unsupported assumptions regarding frequency of violations. *Id.* Through the alleged baseless assumptions, Rodriguez accuses Novolex of inflating the damages sought under each claim. *Id.*

In response, Novolex asserts the following: (1) it is not required to produce documentary evidence at this pleading stage; and (2) its AIC calculations are reasonably based on the allegations set forth in the First Amended Complaint. Opposition at 4-6.

The Court will address the disputed calculations under each asserted claim.

i.    Novolex Is Not Required to Produce Documentary Evidence.

Rodriguez argues that Novolex failed to provide competent evidence supporting the asserted workweeks, violation rates, and assumptions. *See generally* Motion. Novolex disagrees, claiming that the AIC is properly based on the First Amended Complaint's allegations and supporting declaration of Chase Williams. Opposition at 4-6, 11.

Per the Ninth Circuit, the removing party has the burden to prove, by a preponderance of the evidence, that CAFA jurisdiction exists—and may do so through "summary-judgment-type" evidence. *Jauregui*, 28 F.4th at 994; *Ibarra*, 775 F.3d at 1197. Further, a removing party can base its AIC calculations on the allegations of the operative First Amended Complaint so long as its assumptions are reasonable. *Perez*, 131 F.4th at 809; Reply at 6-7.

Here, Novolex, in the Notice of Removal, indicated that its assumptions regarding the total amount of non-exempt employees, workweeks, and violation rates were based on the First Amended Complaint allegations and "business records" which are regularly maintained. NOR ¶¶ 21-23; Williams Decl. ¶¶ 1, 4-6. From those records, Novolex concluded that: (1) from December 4, 2021, to the Notice of Removal, there are "at least 340 non-exempt employees in California," amounting to "32,480 workweeks," NOR ¶ 21; (2) from December 4, 2022, to the present, Rodriguez's employer "separated from at least 110 non-exempt employees in California," with an "average rate of pay" of $20.64, *id.* ¶ 22; and (3) from December 4, 2024, to the present, there are "at least 175 non-exempt employees in California," totaling "5,969 weekly pay periods" after "capping the pay periods at 40 per person," *id.* ¶ 23. These assumptions are supported by Williams' Declaration, which asserts that

Williams is the Vice President of Novolex, is "familiar with and have access to the business and employment records of Novolex," and has control over "personnel data" including "those of Rodriguez and the putative class." Williams Decl. ¶ 1. Contrary to Rodriguez's contention, Motion at 4-6; Reply at 2-4, Novolex is not required to produce its business records, *Jauregui*, 28 F.4th at 994; *Ibarra*, 775 F.3d at 1197. Accordingly, Novolex's obligation was to submit reasonable assumptions based on allegations set forth in the First Amended Complaint and supported by summary judgment type evidence such as Declarations.[3] *Id.*

      ii.      Novolex's Proffered AIC Is Not Reasonable.

Because Novolex seeks removal, it has the burden to establish the requisite AIC by a preponderance of the evidence. *Jauregui*, 28 F.4th at, 99; *Dart Cherokee*, 574 U.S. at 89. As mentioned above, Rodriguez contends that Novolex's proffered AIC calculations are based on speculative and unsupported assumptions. Motion at 4-6; Reply at 4. As discussed below, the Court finds that the relevant assertions in the Notice of Removal and Declaration of Chase Williams are speculative, and the assumptions, improperly grounded in the language of the First Amended Complaint, are unreasonable.

      *1. Rodriguez's Meal and Rest Period Claim*

The parties dispute Novolex's calculated damages related to meal and rest periods.

In its Notice of Removal, Novolex assumed, from its review of business records and allegations set forth in the original First Amended Complaint, that Novolex failed to provide a meal and rest period fifty percent of the workweek. NOR ¶¶ 38-39, 42. Accounting for the average hourly rate calculated based upon a review of Novolex's business records regarding the putative class, Williams Decl. ¶ 4, and Rodriguez's allegation that Novolex's uniform practices "regularly denied"

---

[3] Novolex contends that Rodriguez "provides no evidence to rebut [Novolex's] amount in controversy." Opposition at 7 (citing *Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1239 (9th Cir. 2014)). In *Rea*, the Court found removal was appropriate where the defendant had submitted "substantial, plausible evidence" in support of its AIC and plaintiff subsequently failed to provide rebuttal evidence. 742 F.3d at 1239. Pursuant to *Rea*, the Court must first assess whether Novolex presented sufficient AIC evidence *before* considering if Rodriguez submitted rebuttal evidence. *Id.*

or resulted in employees being "often unable" to take meal and rest periods," it reached an AIC calculation of $3,387,664.[4] NOR ¶¶ 38-42.

Rodriguez asserts that these assumptions are unreasonable because Novolex unreasonably assumes a fifty percent violation rate and failed to narrow the scope of employees to those eligible to receive meal and rest periods. Motion at 6-10; Reply at 4. In response, Novolex points to allegations in the operative First Amended Complaint regarding the alleged "uniform" policies and practices to not provide meal periods or authorize rest periods.[5] 1AC ¶¶ 31, 34, 62-69; Opposition at 8-11. Novolex also points to Williams' Declaration, which provides that "Novolex employed, in the aggregate, at least 340 non-exempt employees . . . that worked approximately 32,480 workweeks." Opposition at 11; Williams Decl. ¶ 4. In its Motion, Rodriguez posits that the Williams' Declaration "fails to mention distinctions among non-exempt employees and the length of shifts worked." Motion at 7. Rodriguez's Reply reiterates that Novolex has failed to provide competent evidence supporting its calculations. Reply at 4-5.

In *Perez*, the Ninth Circuit found that the defendant reasonably assumed a weekly violation based on the plaintiff's allegation that the defendant "committed violations 'at times.'" 131 F.4th at 806-10. The *Perez* court reiterated the *Ibarra* standard: a defendant can base the AIC on reasonable assumptions from allegations of the complaint. *Id.*; *Ibarra*, 775 F.3d at 1197. In the First Amended Complaint, Rodriguez alleges that it was a "uniform" policy and practice for Novolex to not provide meal and rest periods. 1AC ¶¶ 31, 34, 36, 62-69. The First Amended Complaint specifically states that class members, "often" and "regularly": (1) "were denied compliant and timely 30-minute off-duty meal period"; (2) "were not allowed and permitted to take a mandated second meal period"; and "were and often unable to take a ten minute duty-free rest period for every major fraction of four hours worked." *Id.* ¶¶ 31-34. These alleged violations occurred "at all relevant times." *Id.* And the

---

[4] Novolex, as with its minimum wage calculations, addressed the total damages under two categories: (1) damages accrued and (2) damages to be incurred throughout trial. NOR ¶¶ 56-57. As discussed above, the Court concludes that this AIC calculation methodology is supported by binding authority. *Chavez*, 888 F.3d at 414-15.

[5] Novolex cites to numerous nonbinding decisions finding that a fifty percent rate is proper when the operative complaint asserts a policy and practice. Opposition at 11. But Novolex's assumptions here are not unreasonable due to the violative rate. Rather, they are unreasonable because Novolex fails to justify the class members it is applying the rate to. Thus, Novolex's cited decisions are unavailing.

First Amended Complaint alleges that the violations were part of a "company-wide policy/practice." *Id.* ¶ 20. Thus, Novolex's fifty percent violation assumption is in accord with binding precedent, and the assumed wages are reasonable. *Perez*, 131 F.4th at 809.

Although the violation rate is reasonable, the Court finds that the Williams' Declaration does not provide a sufficient basis for Novolex's assumption that members of the putative class were eligible for meal and rest periods. As Rodriguez correctly notes, Williams does not clarify whether each member of the putative class worked sufficient shift hours to be entitled to a meal (over a six-hour shift) or rest period (over a four-hour shift). Motion at 6, 9-10. Thus, Novolex fails to provide any evidence concerning the frequency that the members, in fact, worked shifts which entitled them to meal and rest periods, rendering this assumption unreasonable.

As the Ninth Circuit made clear in *Jauregui*, if the removing party's assumption "is unreasonable on its face without comparison to a better alternative," then the Court may "simply reject that assumption and conclude that the defendant failed to meet its burden" without identifying specific alternative assumptions. 28 F.4th at 996. Here, because Novolex relies on an unreasonable assumption of 32,480 aggregate workweeks to make its AIC calculation, the Court finds that Novolex's AIC estimate to be speculative. *Ibarra*, 775 F.3d at 1197. Accordingly, the Court finds that Novolex has not demonstrated its minimum wage calculation by a preponderance of the evidence.

### 2. Rodriguez's Overtime Claim

The parties dispute Novolex's calculated overtime damages.

In its Notice of Removal, Novolex assumed, from its review of business records and Rodriguez's allegations, that Novolex failed to pay overtime wages to all class members at least one hour per workweek. NOR ¶¶ 33-34, 36-37. Accounting for 32,480 workweeks, the average wage rate for all employees, and a 0.2 hour per week of overtime work, it reached an AIC calculation of $1,016,299. NOR ¶¶ 36-37.

Rodriguez contends that there is no support for the one hour per week assumption as Novolex's estimates are not tied to any allegation or evidence. Motion at 11-14. Novolex describes how the First Amended Complaint explicitly stated that it failed to properly record time worked

which "resulted in [class members] not being paid for all hours" worked. Opposition at 12. Rodriguez responds that "pattern and practice" does not reasonably result in a presumed 100% violation rate. Reply at 14-15.

Here, the First Amended Complaint alleges that due to Novolex's failure to accurately record time worked, class members were "not compensated for all hours worked . . . , including all hours they were subject to the control of [Novolex] and/or suffered or permitted to work under the Labor Code and applicable Wage Orders." 1AC ¶ 50. Notably, Novolex concedes that the First Amended Complaint contains "broad claims of off-the-clock work" but relies on *Perez* to assert that it is reasonable for Novolex to presume a 0.2 weekly violation. Opposition at 12-13. But *Perez* emphasized that violation rate assumptions should have a nexus to the operative complaint. 131 F.4th at 808 ("[A] CAFA defendant can most readily ascertain the violation rate by looking at the plaintiff's complaint."). There, the Ninth Circuit held it was reasonable to assume a one hour a week violation rate where the complaint alleged such violations occurred "at times" and "throughout the statutory period." *Id.* at 806-07. But here, Rodriguez's First Amended Complaint makes no allegation as to the violation rate for off-the-clock work. *See generally* 1AC. As discussed by the parties, the First Amended Complaint states Novolex's failure to accurately record time worked resulted in class members not being paid for all hours worked, without any details as to the amount of off-the-clock hours worked.

As such, the Court finds that the AIC determination for the overtime claim is speculative and unreasonable based on the First Amended Complaint allegations. *Ibarra*, 775 F.3d at 1197. Accordingly, the Court finds that Novolex has not demonstrated its overtime claim calculation by a preponderance of the evidence.

### 3. Rodriguez's Waiting Time Penalty Claim

The parties dispute Novolex's calculated waiting time penalty damages.

Pursuant to Labor Code Section 203, "[i]f an employer willfully fails to pay, without abatement or reduction, in accordance with [California Labor Code] Sections 201 [or] 202 . . . any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a

penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." Cal. Lab. Code § 203.

In its Notice of Removal, Novolex assumed, from its review of business records and allegations set forth in the First Amended Complaint, that it "willfully failed to pay the Waiting Time Subclass for all hours worked." NOR ¶ 24. Accounting for 110 former employees, a 100% violation rate, and Rodriguez's allegation that Novolex "willfully fail[ed] to pay" class members in violation of Section 203, 1AC ¶ 85; NOR ¶ 27, Novolex reached an AIC calculation of $544,896, NOR ¶¶ 25-27.

Rodriguez argues Novolex presumes every employee is entitled to waiting time penalties without any data. Motion at 16-17. In Opposition, Novolex explains that given the alleged claim that all former employees were owed waiting time penalties, it is reasonable to assume that every non-exempt employee could be entitled to a waiting time penalty claim under California Labor Code section 203. Opposition at 15. Rodriguez's Reply reiterates that Novolex's calculation rests on improper assumptions and an incomplete evidentiary showing. Reply at 7-9.

Because Rodriguez asserts a variety and frequency of Labor Code violations against Novolex, and importantly, has not alleged that any class members have been paid the wages at issue, *see generally* 1AC, there *is* a reasonable basis to find that each class member may be entitled to Section 203 penalties. *Perez*, 131 F.4th at 809. But the allegations in the First Amended Complaint that Novolex cites to justify this assumption give no indication that all subclass members who may be eligible for waiting time penalties are owed the *maximum* statutory penalty. Reply at 8. Moreover, Novolex does not produce evidence to support this assumption. The deficiency in supporting allegations combined with the absence of evidentiary support for Novolex's assumption renders the reliance on a maximum statutory penalty for each member of the subclass unreasonable. *Ibarra*, 775 F.3d at 1199 ("[A] damages assessment may require a chain of reasoning that includes assumptions."). Specifically, Novolex has not pointed to evidence or allegations in the First Amended Complaint that sufficiently support a 100% violation rate. When that is so, those

"assumptions cannot be pulled from thin air but need some reasonable ground underlying them."[6] *Arias*, 936 F.3d at 925; *see Garibay v. Archstone Communities LLC*, 539 Fed. App'x. 763, 764 (9th Cir. 2013) (finding defendants' AIC calculation unreasonable where the only evidence was a "declaration by their supervisor of payroll, which sets forth only the number of employees during the relevant period, the number of pay periods, and general information about hourly employee wages"). Therefore, the Court finds that Novolex has not demonstrated its waiting time penalty calculation by a preponderance of the evidence.

### 4. Rodriguez's Wage Statement Penalties

The parties dispute damages pertaining to Novolex's alleged failure to provide accurate itemized wage statements.

In its Notice of Removal, Novolex assumed, from its review of business records and allegations set forth in the First Amended Complaint, that Novolex failed to provide wage statements throughout the statutory period. NOR ¶ 28. Accounting for these assumptions, capping the pay periods at forty (40) per person which totals 5,969 workweeks, it reached an AIC calculation of $588,150 for wage statement penalties damages. *Id.* ¶¶ 30-32.

Rodriguez asserts that it is unreasonable for Novolex to presume "that all 5,969 wage statements at issue were defective" under Section 226(a). Motion at 14. Novolex counters, stating that Rodriguez alleged that the data and First Amended Complaint supports a 100% violation rate. Opposition at 14-15.

The liability under Section 226(a) is expressed under subsection (e)(1):

> An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees.

Cal. Lab. Code § 226(e)(1).

---

[6] Further, Novolex cites to numerous cases to argue that "courts have agreed with utilizing a 100% violation rate for waiting time penalties when premised on the underlying allegations and claims." Opposition at 15-17. However, as stated, the Court finds the violative rate reasonable but that the underlying allegations and claims fail to substantiate that every employee suffered a wage violation entitling them to wage time penalties. Therefore, Novolex's cited cases are unavailing.

The Court finds—in light of the explicit language of the First Amended Complaint—that Novolex, due to its "failure to pay" class members "for all minimum, overtime, and sick pay wages, and missed meal and rest premiums," Novolex "issued and continues to issue wage statements" that are "inadequate under [Section] 226(a)," 1AC ¶¶ 78-79, Novolex's reliance on a 100% violation rate assumption is as unreasonable as its violation rates for the violations noted above *id.* ¶¶ 78-80. It is true that the Williams' Declaration supports Novolex's assumption of 5,969 total wage statements were issued during the relevant period. Williams' Decl. ¶ 6. And it is true that at no time does Rodriguez indicate Novolex proffered compliant wage statements. *See generally* 1AC. But under the theory pleaded in the complaint, a wage statement is only non-compliant if there was a failure to pay. Novolex has failed to establish that it is reasonable that there was a failure to pay on each and every wage statement. Therefore, the Court finds that the AIC assumption made by Novolex is unreasonable.

### 5. *Rodriguez's Labor Code Section 1197.1 Claim*

The parties dispute Novolex's calculated Labor Code Section 1197.1 claim.

Pursuant to Labor Code Section 1197.1:

Any employer or other person acting either individually or as an officer, agent, or employee of another person, who pays or causes to be paid to any employee a wage less than the minimum fixed by an applicable state or local law, or by an order of the commission, shall be subject to a civil penalty, restitution of wages, liquidated damages payable to the employee, and any applicable penalties imposed pursuant to Section 203.

Cal. Lab. Code § 1197.1. For an initial violation, which is intentionally committed, an employer shall be penalized one-hundred dollars for each underpaid employee for each pay period for which the employee is underpaid and two-hundred and fifty for each subsequent violation for each underpaid employee for each pay period for which the employee is underpaid. *Id.*

In its Notice of Removal, Novolex assumed, from its review of business records and allegations set forth in the First Amended Complaint, that it intentionally failed to compensate class members "for all the hours that they work[ed]." NOR ¶¶ 44-47; *see* 1AC ¶¶ 20-21. Accounting for 175 non-exempt employees totaling 8,031 workweeks and a 100% violation rate, Novolex reached an AIC calculation of $1,981,500. NOR ¶¶ 46-47.

Rodriguez argues that Section 1197.1 is "not a standalone private damages remedy" as there "must be a properly pled Private Attorneys General Act ("PAGA") claim." Motion at 10-11. Because the First Amended Complaint does not assert a PAGA cause of action, Rodriguez asserts that Novolex's inclusion of Section 1197.1 penalties must be excluded. *Id.* In Opposition, Novolex states that Rodriguez explicitly "seeks penalties under [Section] 1197.1." Opposition at 19. Novolex concedes that Rodriguez's contentions concern a defense Novolex may raise—but for removal purposes, the Court must assume Rodriguez's allegations and claims are true and will be awarded. *Id.* Rodriguez's Reply reiterates that Section 1191.1 is legally unsupported as there is no basis for recovery given Rodriguez's causes of action. Reply at 9-10.

Under California law, Section 1197.1 penalties are recoverable if brought by the Labor Commissioner or by a private plaintiff under PAGA, Labor Code Section 2699. *See Atempa v. Pedrazzani*, 238 Cal. Rptr. 3d 465, 479 (Cal. Ct. App. 2018). Novolex does not contest Section 1197.1's recovery limitations. Rather, it points to Ninth Circuit holdings, in removal cases, finding: "In determining the amount in controversy, the Court accepts the allegations contained in the complaint as true and assumes the jury will return a verdict in the plaintiff's favor on every claim." *Henry v. Central Freight Lines, Inc.*, 692 F. App'x 806, 807 (9th Cir. 2017). And the "strength of defenses" are "irrelevant" because such contentions "conflat[es] the amount in controversy with the amount of damages ultimately recoverable." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 928 (9th Cir. 2019) (citing *LaCross v. Novolex Transportation, Inc.*, 775 F.3d 1200, 1203 (9th Cir. 2015). Novolex attempts to label the non-recoverability of Section 1197.1 penalties as a valid defense under *Atempa* and emphasizes that Rodriguez expressly seeks Section 1197.1 penalties, 1AC ¶ 22, Prayer for Relief ¶ 4, thereby placing the penalties at stake in this action, Opposition at 19.

However, as stated in Rodriguez's Reply, "[Novolex's] calculation relies on a category of penalties that are not legally recoverable in this action as a matter of law." Reply at 9. Because Rodriguez does not assert a PAGA claim or "assert a cause of action seeking civil penalties on behalf of the State," the damages Novolex includes in its AIC computation are not legally available. Reply at 9-10. Therefore, the Court finds that Novolex has not demonstrated its Section 1197.1 calculation by a preponderance of the evidence.

### 6. Attorneys' Fees

The parties dispute Novolex's alleged attorneys' fees calculations.

In its Notice of Removal, Novolex considered, from the allegations set forth in the First Amended Complaint and the Ninth Circuit's twenty-five percent benchmark, and valued Rodriguez's attorneys' fees at $7,518,509. NOR ¶¶ 50-51.

The Ninth Circuit provides that "when a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy." *Arias*, 936 F.3d at 922 (emphasis added); *see also Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794 (9th Cir. 2018) ("[A] court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met.").

Rodriguez asserts that AIC attorneys' fees calculations cannot include "future attorneys' fees" and Novolex's assumption ignores limitations on recoverable attorneys' fees. Motion at 17-18; Reply at 10-11. Novolex responds that the Ninth Circuit has upheld a twenty-five percent total recovery benchmark for attorneys' fees. Opposition at 14-15.

The Court need not address whether Novolex's attorneys' fees estimate is reasonable. Considering the Court's previous findings, the estimated judgment on which the proposed "benchmark" attorney's fees valuation relies is not supported by sufficient evidence. Put another way, insofar as the Court finds the amounts in controversy estimates for the claims unreasonable, Novolex's attorneys' fees estimate using the "benchmark" method, by derivation, would also be calculated through the use of unreasonable violation rates. Moreover, even assuming the "lodestar" method valuation is correct, as described above, the combined total falls below the $5 million jurisdictional requirement.

In sum, the Court finds that Novolex has not established by a preponderance of the evidence that its AIC calculations for Rodriguez's claims meet the threshold for CAFA jurisdiction.

**III.    CONCLUSION**

For the foregoing reasons, the Court GRANTS the Motion to Remand (Dkt. No. 22) and ORDERS as follows:

1.  The Case is REMANDED to the Superior Court of California for the County of Los Angeles.

IT IS SO ORDERED.

Dated: April 9, 2026

_____

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge

17